UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 23-MJ-201 |
| v. | : | |
| | : | |
| STEVEN COOK, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM
IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant, Steven Cook, be detained pretrial, pursuant to 18 U.S.C. § 3142(e), as no condition or combination of conditions will reasonably assure his appearance or reasonably assure the safety of the community.

**Discussion**

At Cook's initial appearance, the Court ordered a detention hearing because this is "a case that involves . . . a serious risk that [the defendant] will flee." 18 U.S.C. § 3142(f)(2)(A). The Court separately could have ordered a detention hearing because this is "a case that involves . . . a crime of violence." *Id.* § 3142(f)(1)(A). Cook is charged with violating 18 U.S.C. § 1752(a)(4), which is a crime of violence because it includes as an element "the use . . . of physical force against the person or property of another[.]" 18 U.S.C. § 3156(a)(4)(A). *See United States v. Harris*, 1:21-CR-189, ECF No. 75 (D.D.C. June 23, 2023) (Nichols, J.) (finding that § 1752(a)(4) qualifies as a crime of violence under § 3142(f)(1)(A)).

Once the Court determined that a detention hearing was warranted under § 3142(f), the Court must consider the statutory factors outlined in § 3142(g). These factors are:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1691, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—
    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

**1. The Nature and Circumstances of the Offense Charged**

The crimes at the United States Capitol on January 6, 2021, are unlike any this nation has prosecuted in its history. "[T]he violent breach of the Capitol on January 6 was a grave danger to our democracy, and that those who participated could rightly be subject to detention to safeguard the community." *United States v Munchel*, 991 F.3d 1273, 1284-85 (D.C. Cir 2021). But in the two-and-one-half years since its commission, this Court has had opportunity to consider the riot's uniqueness related to various statutes—§ 3142 is no different.

Soon after January 6, § 3142 was interpreted in *United States v Chrestman*, 525 F. Supp. 3d 14 (D.D.C. 2021). The factors outlined by Judge Beryl A. Howell, "[t]aken together, as applied to a given defendant, . . . are probative of 'the nature and circumstances of the offense charged, 18 U.S.C. § 3142(g)(1), and, in turn, of the danger posed by the defendant." *Chrestman*, 525 F. Supp.

3d at 27. Judicial Officers in this district have continued to use the *Chrestman* factors in interpreting detention decisions specifically in the January 6 context. *See, e.g., United States v Matthew Krol*, 642 F. Supp. 3d. 28, 36–39 (D.D.C. 2022) (Contreras, J.).

> These relevant factors are: (1) whether the defendant has been charged with felony or misdemeanor offenses; (2) the extent of the defendant's prior planning; (3) whether the defendant used or carried a dangerous weapon; (4) evidence of coordination with other protestors before, during, or after the riot; (5) whether the defendant assumed a formal or de facto leadership role in the events of January 6, 2021, . . . and (6) the defendant's "words and movements during the riot"—*e.g.*, whether the defendant 'remained only on the grounds surrounding the Capitol' or stormed into the Capitol interior, or whether the defendant "injured, attempted to injure, or threated to injure others."

*United States v Whitton*, 534 F. Supp. 3d 32, 41 (D.D.C. 2021) (Sullivan J.).

On August 10, 2023, the government charged Cook by criminal complaint with assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1); obstruction of law enforcement during a civil disorder, in violation of 18 U.S.C. § 231(a)(3); and three misdemeanor offenses, including physical violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4).

As described in the Statement of Facts, Cook was at the front of the mob confronting police officers on the west plaza of the U.S. Capitol as early as 2:26 p.m. ECF No. 1 at 4. At 2:28 p.m., Cook, along with other rioters, broke through the police line.



*Figure 1.  Screenshot from U.S. Capitol Police CCTV.  COOK circled in red.*

Cook began a violent rampage.  At 2:28:39 p.m., he assaulted MPD Officer J.M.



*Figure 2.  Screenshot from MPD Officer J.M.'s body-worn camera.  COOK circled in red.*

4



*Figure 3.  Screenshot from MPD Officer J.M.'s body-worn camera.  COOK circled in red.*

At 2:28:48 p.m., COOK punched an unidentified police officer, shown in Figures 4 and 5.



*Figure 4. Screenshot from MPD Officer A.A.'s body-worn camera.  COOK circled in red.*

5



*Figure 5. Screenshot from MPD Officer A.A.'s body-worn camera. COOK circled in red.*

At 2:28:50 p.m., COOK continued to assault police officers and further break the police line, as shown in Figure 6.



*Figure 6. Screenshot from MPD Officer A.A.'s body-worn camera. COOK circled in red.*

The events captured in Figures 1–6 were also captured on open-source videos, as shown in Figures 7–8.



*Figure 7.  Screenshot at :23 from open-source video from Parler. COOK circled in red.*



*Figure 8.  Screenshot at :27 from open-source video from YouTube. COOK circled in red.*

7

After the police line broke, the officers retreated into the Lower West Terrace Tunnel, where some of the worst violence occurred. Cook followed close behind, entering the tunnel at 2:43 p.m. Figure 9 shows COOK passing a pole deeper into the tunnel at 2:45:39 p.m.



*Figure 9. Screenshot from USCP CCTV. COOK circled in red.*

Cook left the tunnel at 2:52 p.m. and returned at 3:02 p.m., when he took a gas mask from a nearby rioter, put the gas mask on his head, and pushed his way to the front of the mob. Cook bull-rushed into the tunnel head-first in an attempt to break the line of officers desperately trying to protect members of Congress and their staff from the violent mob. Cook's conduct is shown in multiple MPD body-worn cameras. Figure 10 shows Cook pushing into the police line in the tunnel at 3:03 p.m.



*Figure 10. Screenshot from MPD Officer B.S.'s body-worn camera. COOK circled in red.*

This altercation was captured from other body-worn cameras as well. Figures 11 and 12 show Cook rushing the police line head-first and grabbing a police baton.



*Figure 11. Screenshot from MPD Officer J.P.'s body-worn camera.  COOK circled in red.*



*Figure 12. Screenshot from MPD Officer B.S.'s body-worn camera.  COOK's hand circled in red.*

Cook eventually left the tunnel at 3:05 p.m., only to return once more to participate in a coordinated push against the police with other rioters at 3:55 p.m. Cook ultimately left the tunnel at 4:08 p.m.

On January 20, 2021, Cook participated in a phone interview with the FBI about his January 6 conduct.  During the phone interview, Cook minimized his conduct.  He admitted to attending the Stop the Steal rally and then walking to the U.S. Capitol building with his father.  As he "got over some things" on his way to the building, Cook claimed he asked people to stop.  He admitted watching people break windows to the U.S. Capitol building and claimed he told them to stop too.  Cook did not reveal any of his violent conduct on January 6.

Evaluating the "nature and circumstances of the offense charged" in light of the *Chrestman* factors, § 3142(g)(1) weighs in favor of detention.  First, Cook has been charged with felony offenses.  Second, Cook actively helped the mob in the tunnel by passing a large pole to the front of the mob, where he knew rioters were confronting police officers.  *See* Figure 9.  Third, Cook assumed a de facto leadership role on January 6 when he helped lead the mob through the police line on the west front; at that moment, his violence was the tip of the spear that pulled many other rioters through the police line and forced police officers to retreat into the tunnel.  *See* Figure 1; *see also* Figures 2–8.  Fourth, Cook's "words and movements during the riot" are revelatory.  He struck multiple police officers and then spent over an hour repeatedly trying to breach the police line in the tunnel, where some of the worst violence on January 6 occurred.  There is no question that Cook attempted to injure police officers on January 6—he literally punched an officer in the head.  *See* Figures 4–5.  In short, the nature and circumstances of the charged offenses are severe.

11

### 2. The Weight of the Evidence Against Steven Cook.

The weight of the evidence here is overwhelming. The government will provide the finder-of-fact with video evidence of each criminal act alleged in the Criminal Complaint, as shown in Figures 123–12 and the screenshots within the Statement of Facts. As described in the Statement of Facts, Cook's violent rampage on the west front and in the tunnel was captured by multiple body-worn cameras from the officers who were on the ground. *See* Figures 2–6; 10–12. Other rioters recorded Cook assaulting police officers on the west front. *See* Figures 7–8. Further, on top of the extensive video evidence, the finder-of-fact will benefit from the receiving testimony from the officers who were on the west front and inside the Lower West Terrace entranceway during Cook's assaults on them. The weight and amount of this evidence is overwhelming and weighs heavily in favor of detention.

### 3. The History and Characteristics of Daniel Ball.

Steven Cook's history and characteristics demonstrate a violent disregard for lawful authority and, together, make Cook a flight risk.

Following his January 6 conduct, Cook was arrested on June 28, 2021, for driving while under the influence of alcohol (DUI) in Frederick, Maryland ("Frederick DUI"). On August 9, 2022, he was placed on supervised probation for a single year. That proved too difficult for Cook. On May 27, 2023, Cook was arrested again for a DUI, this time in Ocean City, Maryland ("Ocean City DUI"). The Ocean City DUI included a concealed dangerous weapon charge, related to a knife found in Cook's glovebox. His trial for the Ocean City DUI is scheduled to begin on October 6, 2023. The Ocean City DUI also led to a probation violation related to his Frederick DUI, and the hearing for that violation is scheduled for October 3, 2023.

On August 10, 2023, the government charged Cook by Criminal Complaint with the instant offenses in this case. ECF No. 1.  Due to an administrative error within the U.S. Attorney's Office, the sealed warrant was made public the morning of August 17, 2023, and then taken down by noon the same day.  In the few hours it was available online, it was disseminated widely on social media, primarily Twitter.  On August 21, 2023, the FBI contacted Cook's defense counsel for the Ocean City DUI, informed him of the outstanding arrest warrant, and instructed him that Cook needed to turn himself into the FBI or contact the case agent.  On August 22, 2023, the FBI again contacted Cook's defense counsel for the Ocean City DUI, and the defense counsel relayed to the FBI that he had informed Cook of the arrest warrant and the FBI's instructions, and Cook replied that he "would contact the FBI when he was ready to turn himself in."  From that date until his arrest, a period of more than three weeks, the FBI did not hear from Cook or his defense counsel.  The FBI conducted surveillance on Cook's listed Frederick residence in August 2023 and the first half of September 2023 and could not identify Cook or a vehicle registered in his name.

At approximately 2 a.m. on September 16, 2023, Cook was arrested in Loudoun County, Virginia.  According to the police report, Cook participated in a drunken bar fight near a lake. Before the police could arrive on scene, Cook fled in a black Hyundai with Maryland tags.  An officer found Cook in his car—a dark blue Hyundai with Maryland tags—on the opposite side of the lake, approximately a third of a mile away from the scene.  Cook was shirtless in the driver's seat and had blood on his hands along his knuckles and fingers, as well as in and around his mouth. Cook told the officer that his primary address was in Frederick, Maryland (the address where the FBI had been conducting surveillance), but he was staying in Ashburn, Virginia.  He was arrested for public intoxication.  When local police processed Cook, they became aware of his outstanding federal warrant and asked Cook if he was aware of it.  He responded that he was aware.

13

After the FBI took custody of Cook, he made multiple statements to the FBI, including that he learned of his arrest warrant from social media. He told the FBI that he had intended to turn himself in, but wanted to watch his favorite football team more before doing so.

Cook has repeatedly and flagrantly disregarded lawful authority and proven that he cannot respect conditions of release. Cook's history and characteristics weigh in favor of detention.

**4. The Nature and Seriousness of the Danger to Any Other Person and the Community.**

The facts discussed above show that, if released, the defendant would represent an ongoing danger. Cook's violent conduct against law enforcement officers on January 6 is significant and egregious, and stands out even among the other instances violent conduct exhibited on that infamous day. His conduct since January 6 further shows he is a danger to himself and anyone on the road around him. There is no condition or combination of conditions that will reasonably assure the appearance of the defendant or that will reasonably assure the safety of the community. Steven Cook should be detained pending trial.

**Conclusion**

For the reasons stated above, the Court should find that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community, pursuant to 18 U.S.C. § 3142(e). The Court should order the defendant detained pending trial.

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

_____
MICHAEL L. JONES
Trial Attorney
DC Bar No. 1047027
601 D Street NW
(202) 252-7820
michael.jones@usdoj.gov