IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: 23-CR-340 (TNM) |
| v. | 18 U.S.C. § 111(a)(1) |
| STEVEN COOK, | |
| Defendant. | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Steven Cook, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

1

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. On January 6, 2021, the defendant was at the west plaza steps on the west side of the U.S. Capitol building, within the restricted area, as early as 2:26 p.m. At 2:28 p.m., the defendant, along with other rioters, broke through the police line.

9. At 2:28 p.m., after the police line was broken, the defendant assaulted multiple officers, including at least one U.S. Capitol Police Officer and MPD Officer J.M. The defendant pushed between and against police officers to further break the line. The defendant repeatedly grabbed police officers' batons and then swung his closed fist at their heads.

10. Police officers retreated toward the U.S. Capitol building. Many police officers retreated into and began protecting the Lower West Terrace Tunnel entrance to the U.S. Capitol building.

11. At 2:43 p.m., the defendant entered the Lower West Terrace Tunnel. At 2:52 p.m., the defendant left the tunnel.

12. At 3:02 p.m., the defendant returned to the tunnel. The defendant took a gas mask from a nearby rioter, put the gas mask on his head, and pushed his way to the front of the mob. At approximately 3:03 p.m., the defendant bull-rushed into the tunnel head-first in an attempt to break the line of officers desperately trying to protect members of Congress and their staff from the violent mob. During his bull-rush into the line of police officers, the defendant made physical contact with at least one MPD Officer and grabbed the baton of another police officer.

13. At 3:05 p.m., the defendant left the tunnel. At 3:55 p.m., the defendant returned to the mouth of the tunnel, where he and other rioters were pushing against the line of police officers. At 4:08 p.m., the defendant left the area of the tunnel.

### *Elements of the Offense*

14. The parties agree that Count Two, charging a violation of 18 U.S.C. § 111(a)(1), requires the following elements:

   a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with J.M., an officer from the Metropolitan Police Department, at approximately 2:28 p.m. on January 6, 2021.

   b. Second, the defendant did such acts forcibly.

   c. Third, the defendant did such acts voluntarily and intentionally.

   d. Fourth, the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his or her official duties or was assisting officers of the United States who were then engaged in the performance of their official duties.

    e. Fifth, the defendant made physical contact with that officer, or acted with the intent to commit another felony.

15. The parties further agree that Count Three, charging a violation of 18 U.S.C. § 111(a)(1), requires the following elements:

    a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer from the Metropolitan Police Department at approximately 3:03 p.m. on January 6, 2021.

    b. Second, the defendant did such acts forcibly.

    c. Third, the defendant did such acts voluntarily and intentionally.

    d. Fourth, the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his or her official duties or was assisting officers of the United States who were then engaged in the performance of their official duties.

    e. Fifth, the defendant made physical contact with that officer, or acted with the intent to commit another felony.

*Defendant's Acknowledgments*

16. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he assaulted an officer from the Metropolitan Police Department at 2:28 p.m. on January 6, and another officer from the Metropolitan Police

Department at 3:03 p.m. on January 6, and that he made contact with other officers and acted with the intent to commit another felony, specifically, 18 U.S.C. § 231(a)(3).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   /s/   Michael L. Jones
Michael L. Jones
Trial Attorney, Detailed to the U.S. Attorney's Office for the District of Columbia

## DEFENDANT'S ACKNOWLEDGMENT

I, Steven Cook, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 3/21/24

Steven Cook
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 3/21/24

Alexis Gardner
Attorney for Defendant